IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Luz Stella Giraldo, ) | C/A No.: 3:12-3357-JFA-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | |
| City of Columbia; Sylvia White; Mark ) | |
| D. Johnson; and Vincent J. Simonowicz, ) | |
| in their individual capacities, ) | |
| ) | |
| Defendants. ) | |
| ) | |

In this employment discrimination case, Luz Stella Giraldo ("Plaintiff") is suing her former employer City of Columbia ("City"); Sylvia White ("White"), Plaintiff's supervisor at the time of her termination; Mark D. Johnson ("Johnson"), a former supervisor of Plaintiff; and Vincent J. Simonowicz ("Simonowicz"), another former supervisor of Plaintiff (collectively "Defendants"). Plaintiff alleges the following causes of action: (1) retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.* ("Title VII") against City; (2) discrimination and retaliation pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601, *et. seq.* ("FMLA") against City; (3) violation of the South Carolina Whistleblower Act, S.C. Code Ann. § 8-27-10, *et. seq.* ("Whistleblower Act") against City; and (4) civil conspiracy against White, Johnson, and Simonowicz ("Individual Defendants").

This matter comes before the court on Defendants' motion for summary judgment filed on September 18, 2013. [Entry #16]. This matter having been fully briefed [Entry

#23, #24], it is ripe for disposition. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.).  Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration.  For the reasons that follow, the undersigned recommends the district court grant Defendants' motion for summary judgment.

I.     Factual Background

Plaintiff was hired in 2002 in City's Information Technology ("IT") Department as part of an outreach to employ Latinos. [Entry #23-1 at 9]. Plaintiff alleges that she suffered discrimination and a hostile work environment "from day one" of her work for City because of her national origin (Colombian). [Entry #16-2 at 2]. Plaintiff complained about the treatment to City's Human Resources ("HR") Director Jacques Gilliam and Assistant Manager Gladys Brown. [Entry #20 at 11–13]. When Simonowicz was hired as the director of IT in 2007, Plaintiff gave him a document outlining her complaints about the IT staff and management's alleged harassment. [Entry #23-11]. Simonowicz dubbed the document "Luz Manifesto Pre-2007 All the Wrongs." *Id*. According to Simonowicz, he investigated Plaintiff's allegations, but concluded that they were mostly "unfounded or a distortion of the facts." *Id*. Plaintiff and Simonowicz had a strained relationship and Plaintiff often complained about him to HR or requested that HR be present in meetings between team members. [Entry #23-5 at 11–13; Entry #23-12].

On March 17, 2011, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") based on sex and national origin

discrimination and retaliation ("March 2011 Charge"). [Entry #16-3]. In her March 2011 Charge, Plaintiff indicated that she was subjected to discrimination beginning July 22, 2002, through the date of her charge. *Id*. She also indicated that she had continually complained to HR. *Id*. Following an investigation, the Division Director for the South Carolina Human Affairs Commission ("SCHAC") issued specific findings that there was not sufficient proof to support Plaintiff's contentions of unlawful discrimination. [Entry #16-4]. The EEOC adopted the SHAC findings and provided Plaintiff a right to sue notice on December 20, 2011. [Entry #16-5]. Plaintiff did not file suit with regard to her March 2011 Charge.

On July 14, 2011, Simonowicz recommended Plaintiff be given "a written warning and a 90-day probationary period for various performance related issues." [Entry #23-6]. Simonowicz left his position around August 2011 and White became IT director. *Id*.; [Entry #23-4 at 5]. On August 12, 2011, Senior Assistant City Manager Allison Baker sent an email indicating that he had recommended, and the City Manager concurred, that the disciplinary actions recommended by Simonowicz be expunged from Plaintiff's record. [Entry #23-6]. According to White, Baker wanted to "wipe the slate clean as far as Luz's performance was concerned." [Entry #23-4 at 11]. However, on November 14, 2011, Plaintiff received a "Notice of Poor Performance" and she was placed on a performance improvement plan ("PIP").[1] [Entry #23-13]. As part of the PIP, Plaintiff met with White or Michael Vukovich (the next person in the chain of command) each week to discuss performance issues. *Id*.

---

[1] The record is silent as to any events that occurred between August and November 2011.

Plaintiff was terminated on February 29, 2012, for "persistent performance deficiencies." [Entry #16-6]. Plaintiff appealed her termination to the City's Grievance Committee ("Committee"). Following a hearing, the Committee unanimously recommended that the City Manager uphold Plaintiff's termination and the City Manager accepted the Committee's recommendation. [Entry #16-7 at 1].

On April 2, 2012, Plaintiff filed a second charge with SCHAC alleging Title VII retaliation. [Entry #17-2]. This charge listed the earliest date of discrimination as April 1, 2011, and the latest date of discrimination as November 30, 2011. *Id.* On April 4, 2012, Plaintiff filed a third charge of discrimination that amended her second charge by adding the statement: "Subsequently I was discharged." [Entry #17-3]. The third charge contained the same dates of discrimination as her second charge. *Id.* Plaintiff received right to sue notices from SCHAC on August 8, 2012 and the EEOC on August 23, 2012. [Entry #17-4]. Plaintiff filed this action on November 26, 2012.

II.  Discussion

   A.  Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of

materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

B.  Analysis

1.  Title VII Retaliation

Plaintiff asserts a retaliation claim under Title VII. Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

As an initial matter, City argues that Plaintiff failed to exhaust her remedies for retaliation based on her termination because her April 2012 charges indicate that the alleged discrimination occurred between April 1, 2011 and November 30, 2011.

5

However, Plaintiff specifically amended her April 2, 2012 charge on April 4, 2012 to include an allegation that she had been discharged. A plaintiff's administrative claim "defines the scope of her subsequent right to institute a civil suit." *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000). "If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent suit." *Id.* at 247–48. Here, Plaintiff's claim of retaliatory discharge can reasonably be expected to flow from her charge despite the dates cited, and City was on notice of such a claim. In fact, City actually interpreted the charge to include a claim of retaliatory discharge. [Entry #23-24]. Therefore, Plaintiff's retaliatory discharge claim should not be dismissed for failure to exhaust

To establish a prima facie case of retaliation under Title VII, a plaintiff must show (1) she engaged in protected activity, (2) the employer took adverse employment action against her, and (3) a causal connection existed between the protected activity and the adverse action. *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998). Once Plaintiff establishes the elements of her prima facie case, the burden shifts to City to proffer evidence of a legitimate, non-discriminatory reason for taking the adverse employment action. *See Burdine*, 450 U.S. at 253. Plaintiff then has the burden to show that City's legitimate, non-retaliatory reason is pretextual. *See Matvia v. Bald Head Island Mgmt.*, 259 F.3d 261, 271 (4th Cir. 2001).

Plaintiff alleges that she engaged in protected activity by filing her March 2011 Charge, and City took adverse employment action against her by terminating her.[2] City argues that Plaintiff cannot prove a causal connection between her protected activity and the alleged adverse employment action. Plaintiff concedes that she cannot rely on temporal proximity alone to show a causal connection for purposes of her prima facie case. [Entry #23 at 16]. However, Plaintiff argues that temporal proximity, combined with other evidence of retaliatory animus, can show a causal connection, and she alleges that Plaintiff "made protected complaints about perceived discrimination approximately 20 days prior to her termination."[3] *Id*. at 17.

Plaintiff argues that her alleged protected complaints are evidenced by references in her weekly performance reviews that note that she continues to threaten to report White and others to HR.  However, the performance reviews do not reflect that Plaintiff planned to report illegal discrimination to HR.  The following excerpts from Plaintiff's performance reviews reference Plaintiff's complaints:

- "Luz indicated she is going to email HR and Mr. Baker meeting minutes moving forward. She continues to threaten to go to upper management when she does not like what she is asked of her." [Entry #23-13 at 7].

- "Luz continues to make unfounded accusations. She indicated Sylvia and Mr. Baker [are] punishing her." *Id*. at 9.

---

[2] Plaintiff and City appear to agree that the only adverse employment action at issue is Plaintiff's termination, as neither has provided argument about another adverse employment action. To the extent Plaintiff's complaint contains additional alleged adverse employment actions, it appears she has abandoned such allegations.

[3] Plaintiff does not argue that the "protected complaints" constitute separate protected activities under Title VII, but uses these references solely to show retaliatory animus.

- "Luz became upset because I said she could not give me a status regarding CDC replacement computers. She stated she will contact HR and request they be included in our meetings." *Id*. at 11.

- "I instructed Luz to email me directly for any tasks I assign to her, and not to send to Mr. Baker. I explained she is misunderstanding the open door policy with daily operational tasks. Luz continues to attempt to intimidate by indicating she is going to report me to Mr. Baker and Human [R]esources." *Id*. at 14.

- "[Calling HR during a meeting and refusing to hang up] is typical behavior exhibited by Luz on a constant basis. Always threatening to go to HR if she disagrees and refusing to listen." *Id*. at 16.

The undersigned find the foregoing references are insufficient to support a causal connection for Plaintiff's termination based on protected complaints/activity. The complaints referenced in the performance reviews show that Plaintiff often threatened to report behavior to HR that she believed was unfair, but they are devoid of any indication that she was complaining of illegal discrimination. Anti-retaliation laws do not "protect employees who, with no more than good faith, complain about conduct that no reasonable person would believe amounts to an unlawful employment practice." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 342 (4th Cir. 2006). Instead, the employee's belief that the conduct of which she complains actually violates the statute in question must be an objectively reasonable one, and whether the employee's belief is reasonable is a question of law for the court. *Id*. at 339.

Here, the references in Plaintiff's performance reviews about her threats to report her supervisors to HR are insufficient to show that City had retaliatory animus, even when considered with the year-long temporal proximity between Plaintiff's March 2011 Charge. Therefore, Plaintiff has failed to set forth a prima facie case of Title VII

8

retaliation,[4] and the undersigned recommends City be granted summary judgment on this claim.

        2.     FMLA Retaliation

To establish a prima facie case of retaliation under the FMLA, Plaintiff must show: (1) she made use of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) that there is a causal connection between her protected activity and the employer's adverse employment action. *See, e.g., Perry v. Computer Sciences Corp.*, 429 F. App'x 218, 220 (4th Cir. 2011). It is undisputed that Plaintiff exercised a protected right by requesting FMLA leave, which was approved on February 20, 2012. [Entry #23-16]. It is also undisputed that Plaintiff was adversely affected by an employment decision when she was terminated on February 29, 2012. [Entry #16-6]. Additionally, because of the nine day temporal proximity, the undersigned finds Plaintiff has set forth a prima facie case under the FMLA. *See Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006) ("While evidence as to the closeness in time "'far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality.'") (citations omitted).

The burden shifts to City to articulate a legitimate, non-retaliatory reason for Plaintiff's discharge. City maintains that Plaintiff was terminated because of persistent

---

[4] Even if Plaintiff were able to make a prima facie case, City has articulated a legitimate non-discriminatory reason for her termination by pointing to her perceived performance deficiencies. [Entry #16-6]. Plaintiff relies again on the references in Plaintiff's PIP reviews to show pretext. For the same reasons discussed above that these references are insufficient to show retaliatory animus, they are insufficient to show pretext.

9

performance deficiencies. [Entry #16-6]. City gave Plaintiff a "Notice of Poor Performance" on November 8, 2011, which appears to be before she requested intermittent FMLA leave for 2012 to 2013.[5] [Entry #23-16].

City having articulated a legitimate non-discriminatory reason for her termination, the burden shifts back to Plaintiff to show that City's proffered reason was pretextual. To show pretext, Plaintiff first relies on Simonowicz's deposition testimony to show he had complained about Plaintiff's use of FMLA leave. [Entry #23 at 20]. A review of the cited testimony reveals that Simonowicz only complained when Plaintiff left meetings without any advanced notice of FMLA leave. [Entry #23-5 ay 7–9]. In addition, Simonowicz was not employed by City when Plaintiff was terminated and took no part in the decision to terminate her. Plaintiff also argues that "her treatment while on FMLA compared to others is material." [Entry #23 at 20]. However, Plaintiff provides no evidence from the record showing that she was treated differently than others while on FMLA leave. Plaintiff points to her positive performance reviews prior to being placed on a PIP and claims that her placement on a PIP was based in part on her participation in protected activities under Title VII. *Id.* at 18–19, 20. However, Plaintiff has not shown that her "Notice of Poor Performance," the subsequent PIP, or her termination were causally connected to her exercise of FMLA rights.

---

[5] Although the complaint lists time periods prior to February 2012 that Plaintiff was approved to take intermittent FMLA leave, the record before the court does not specify such dates. Plaintiff and City do not dispute that Plaintiff was approved for and used FMLA leave prior to February 2012.

10

Because Plaintiff may not rely solely on temporal proximity to show pretext, *see Yashenko*, 446 F.3d at 551, the undersigned recommends City be granted summary judgment as to Plaintiff's FMLA claims because she cannot show that City's proffered reason for termination was pretextual.

### 3. Whistleblower Act Claim

The Whistleblower Act establishes a private cause of action for an employee of a public body who suffers retaliation for making a "report" of waste or "wrongdoing" by the public body or its employees to an "appropriate authority." S.C. Code Ann. § 8-27-10, *et. seq*. Plaintiff claims her termination was also based on her report of a financial discrepancy shown in a computer program. [Entry #23 at 10]. Whistleblower Act claims must be filed within one year of the alleged conduct and after exhaustion of all available grievance, administrative, or judicial remedies. All claims under the Whistleblower Act are non-jury and tried to a court. S.C. Code Ann. § 8-27-30(A) and (B).

The Whistleblower Act requires an employee to exhaust administrative remedies and obtain a favorable ruling on the report of alleged wrongdoing in order to bring suit. Specifically, the statute provides:

> No action may be brought under this chapter unless (1) the employee has exhausted all available grievance or other administrative remedies; and (2) any previous proceedings have resulted in a finding that the employee would not have been disciplined but for the reporting of the alleged wrongdoing.

S.C. Code Ann. § 8-27-30(A). Here, Plaintiff filed a grievance with City's Grievance Committee. During the hearing, Plaintiff argued that she was terminated for her "nationality, retaliation, whistleblower and conspiracy." [Entry #20 at 68–69]. The

11

Committee upheld Plaintiff's termination based upon her poor performance and made no finding that her termination was in any way related to her reports of wrongdoing. *Id.* at 69. Therefore, City argues that Plaintiff does not have standing to sue because she has not met the prerequisites for suit under the statute. Plaintiff argues that the Committee's decision is not dispositive because such an interpretation would render the statute absurd. [Entry #23 at 21].

Under South Carolina law, all rules of statutory construction "are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute." *State v. Sweat*, 688 S.E.2d 569, 575 (S.C. 2010) (quoting *Broadhurst v. City of Myrtle Beach Election Comm'n*, 537 S.E.2d 543, 546 (S.C. 2000)). The words of a statute should be given "their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand that statute's operation." *Id.* "Where [a] statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Hodges v. Rainey*, 533 S.E.2d 578, 581 (S.C. 2000). "It is only when applying the words literally leads to a result so patently absurd that the General Assembly could not have intended it that [the court should] look beyond the statute's plain language." *Grier v. AMISUB of South Carolina, Inc.*, 725 S.E.2d 693, 695–96 (S.C. 2012).

Here, the language of S.C. Code Ann. § 8-27-30(A) is clear and unambiguous. The undersigned does not find that a literal application of the words of the statute leads to a result "so patently absurd that the General Assembly could not have intended it."

12

Therefore, because Plaintiff cannot satisfy a necessary element to bring a statutory whistleblower claim, the undersigned recommends City be granted summary judgment on this claim.[6] *See*, *Burdine v. Greenville Technical College*, C/A No. 6:08-3764-JMC, 2010 WL 5211544, \* 13 (D.S.C. Dec. 16, 2010) (failure to present evidence that a previous proceeding resulted in a finding that plaintiff would not have been disciplined but for reporting alleged wrongdoing bars relief under the Whistleblower Act).

### 4.     Civil Conspiracy

Plaintiff asserts a claim of civil conspiracy against Individual Defendants. "A civil conspiracy is a combination of two or more persons joining for the purpose of injuring and causing special damage to the plaintiff." *McMillan v. Oconee Mem'l Hosp., Inc.*, 626 S.E.2d 884, 886 (S.C. 2006). "A claim for civil conspiracy must allege additional acts in furtherance of a conspiracy rather than reallege other claims within the complaint." *Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 874 (S.C. App. 2009). In other words, the acts pled in furtherance of the conspiracy must be "separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit the dismissal of the claim." *Hackworth* at 875. "Moreover, because the quiddity of a civil conspiracy claim is the special damage resulting to the plaintiff, the damages alleged must go beyond the damages alleged in other causes of action." *Id.* at 874. "Special damages are those elements of damages that are the natural,

---

[6] City argues that Plaintiff has failed to meet any element necessary for a Whistleblower Act claim. Because the Committee did not find that Plaintiff's report was the "but for" cause of her termination, and Plaintiff has therefore not met the prerequisites for bringing suit, the undersigned has not addressed all of City's arguments.

13

but not the necessary or usual, consequence of the defendant's conduct." *Id.* "If a plaintiff merely repeats the damages from another claim instead of specifically listing special damages as part of their civil conspiracy claim, their conspiracy claim should be dismissed." *Id.*

Individual Defendants argue that Plaintiff has failed to identify concrete acts independent of any other alleged wrongdoing. In response, Plaintiff cites her own testimony to show that Individual Defendants allegedly acted in combination to hurt her by "contacting vendors and requesting that they complain about her, turning her subordinate employees and co-workers against her, and isolating her within her employment at the city." [Entry #23 at 24]. However, the testimony cited by Plaintiff consists of general allegations that Individual Defendants "ganged up" on her or "turned other coworkers against her." [Entry #23-1 at 17, 29, 38]. While Plaintiff testified that "they also called several vendors to try to be against me," *id.* at 179, she provides no further specifics, such as when and which vendors were called. Additionally, while she alleges that Individual Defendants met together to conspire against her, *see* Entry #23-1 at 37, she provides no proof beyond her own testimony of inadmissible hearsay. *Greensboro Prof'l Fire Fighters Ass'n v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995) ("[E]vidence [that] consists of inadmissible hearsay . . . is neither admissible at trial nor supportive of an opposition to a motion for summary judgment."); *see also*, Fed. R. Civ. P. 56(c)(2).

Finally, Plaintiff has not shown special damages as required for a civil conspiracy claim. While Plaintiff claims she has been maliciously "blacklisted," she has not shown

14

evidence of such blacklisting. The Fourth Circuit has held that to effectuate recovery under a theory that Plaintiff has been blacklisted, "the plaintiff must prove that there was a blacklist, a combination of employers who exchanged the information contained on the blacklist, and a willful or malicious use of the blacklist by one or more of the members of the combination, with resultant injury to the plaintiff." *Austin v. Torrington Co.*, 810 F.2d 416, 421 (4th Cir. 1987). Plaintiff has not shown how she has suffered loss to her reputation or has otherwise been "blacklisted." Plaintiff also argues that the costs of prosecuting an action is a cognizable special damage under South Carolina law, citing *Benedict College v. Nat'l Credit Sys., Inc.*, 735 S.E.2d 518, 523 (2012). A review of *Benedict College* reveals that it is distinguishable from the instant case in that the civil conspiracy claim was brought as a counterclaim by Defendant and was distinct from Defendant's other claim for breach of contract. *Id*. Here, Plaintiff has not spent costs defending a claim, and the costs of prosecuting her civil conspiracy claim are not distinct from her prosecution of her other claims. Finally, although Plaintiff claims she suffered depression, stress, and anxiety related to her civil conspiracy claim, she also claims she suffered "humiliation [and] mental and emotional suffering" from her Title VII retaliation claim. Therefore, Plaintiff has not set forth evidence of special damages.

The undersigned recommends Individual Defendants be granted summary judgment, because no reasonable juror could find in Plaintiff's favor on her civil conspiracy claim.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendants' motion for summary judgment [Entry #16] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

April 16, 2014                                                    Shiva V. Hodges
Columbia, South Carolina                                 United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

16

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).